UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEREMY LOCKETT,

        Plaintiff,

v.                                                                                         Case No. 17-C-691

TANYA BONSON, et al.,

        Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

*Pro se* Plaintiff Jeremy Lockett, who is currently serving a state sentence at the Wisconsin Secure Program Facility (WSPF), filed this action under 42 U.S.C. § 1983, alleging that Defendants Tanya Bonson, Beth Edge, and Jane Doe were deliberately indifferent to his serious medical condition in violation of his Eighth Amendment rights. The court screened Lockett's complaint on October 13, 2017, and allowed him to continue on his deliberate indifference claim. ECF No. 12. Currently before the court is Edge's motion for summary judgment (ECF No. 32), Bonson's motion for summary judgment (ECF No. 38), Lockett's motion to strike Bonson's supplemental affidavit (ECF No. 61), and Lockett's motion for appointment of counsel (ECF No. 59). For the reasons that follow, both motions for summary judgment will be granted, Lockett's motion to strike will be denied, and Lockett's motion for appointment counsel will be denied.

### BACKGROUND

Lockett has Sickle Cell Disease (SCD), a genetic disease of the red blood cells. Specifically, Lockett has HGB SC, the less severe form of SCD. Sickle cell patients are often prescribed continual

pain medication for treatment and prescribed stronger medication for break-through pain. Bonson was a nurse practitioner at WSPF and Edge was a nurse at WSPF during the relevant times.

On September 2, 2016, Lockett submitted a health service request (HSR) stating, "I've been taking the pain medication as prescribed for my back and it's not working I'm constantly in pain and I would like to see the doctor about this problem." ECF 42-3 at 119. Later that day, Bonson wrote an order discontinuing the Tramadol, Lockett's current pain medication, and ordered Tylenol #3 and prescribed that Lockett take two tablets as needed four times daily for four days. Bonson renewed the prescription for two weeks on September 12, 2016, and for thirty days on September 20, 2016. Lockett's treatment record shows that the Tylenol #3 was unavailable for a few dosages on September 23 and 25, and that he refused a dosage on September 26, 2016. Lockett went without Tylenol #3 from noon on September 26 until noon on October 4, 2016—a period of 8 days (though, as will be discussed later, two of these days were spent at the emergency room where Lockett was provided pain medication). ECF 57-1 at 11–13.

From September 26 until the incident on October 3, 2016, Lockett did not complain of pain to Bonson and only submitted a single HSR on September 27, 2016, stating, "I would like to know if I'm scheduled to see the specialist for my sickel-cell?" *Id.* at 15. Bonson responded later that day stating, "Yes, you will have an appointment." *Id.* During September of 2016 Lockett did submit medication supply refill requests, none of which were for Tylenol #3. *See id.* at 16–18.

On October 3, 2016, Lockett was sent to a local emergency room to treat a sickle cell crisis, per the emergency nursing protocol at WSPF, and returned to WSPF the next day. Upon his return, Nurse Anderson documented the recommendation of the emergency physician, Dr. Jong Mei, for Lockett: Oxycodone 10-20 mg every four hours as needed to be filled the next morning. Bonson

2

disagreed with Dr. Mei's recommendation, noted in the record that Lockett received a dose of Oxycodone 20 mg on October 4, 2016 while at the emergency room, and recommended that Lockett continue to be treated with Tylenol #3. In reaching her determination, Bonson considered the fact that Lockett's long-term pain had been successfully managed with Tylenol #3 prior to this crisis, the concern in prison systems for opioid and substance abuse, the amount prescribed, the fact that the prescription would require approval from the Class III Committee, and Lockett's prior medical history.

On October 4, 2016, Lockett submitted an HSR stating, "I am constantly having pain in my left thigh-leg and this pain medication is not working. The doctor at [the emergency room] prescribed me with pain medicine. Why am I not getting it?" ECF No. 42-3 at 118. Bonson responded, "You are receiving pain medication." *Id*. A few days later, on October 8 and 9, 2016, Lockett refused the Tylenol #3 during medication pass, reporting that "he just didn't need the medication at that time." *Id*. at 17. Later that month, the Department of Corrections medical director, Dr. Holzmacher, entered an order on October 21, 2016, to renew Lockett's Tylenol #3 order for one month.

The following month, Locket filed complaint WSPF-2016-25074 with the Inmate Complaint Examiner (ICE) against Edge on November 15, 2016. Lockett complained he was denied his pain medication because Edge did not bring it over when initially requested and that he was forced to wait until the next medical pass as a result. ECF No. 35-4 at 6. Lockett stated that Edge did not bring the medicine because the call "was not received until 11:45, after med. pass time." *Id*.

Upon investigating the complaint, the Inmate Complaint Examiner (ICE) recommended it be dismissed because "[t]here is no indication that Lockett was denied medication." *Id*. at 2. Lockett did not appeal the decision.

On November 17, 2016, Lockett was seen by a nurse in the HSU. The nurse's encounter notes state that Lockett reported "the pain is unbearable, please help" and "the pain meds aint doin [sic] shit!" ECF No. 42-3 at 15. The nurse's notes also report that he declined medication because the evening med pass was ineffective. Lockett was transferred to Gundersen Hospital per the emergency nursing protocol. When Lockett returned from Gundersen Hospital on November 19, 2016, Nurse Bethel documented the recommendations from the Gundersen physician, Dr. Kaplan, which included APAP 500 mg every six hours as needed, to stop January 8, 2017; discontinue Acetaminophen/Codeine 300/30 mg; and start Hydrocodone/Acetaminophen 5/325 mg one table every four hours for pain. Bonson countersigned the order that same day. Two days later, Bonson evaluated Lockett at a follow-up appointment and entered an order for Hydrocodone/APAP 5/325, two tablets every four hours as needed for one week and set a follow-up appointment in one week. On November 28, 2016, Bonson adjusted the order to Hydrocodone/APAP 5/325, prescribing two tablets every four hours for thirty days. The next day Bonson evaluated Lockett regarding his pain medication and noted that "[Lockett] believes it is working well for him." *Id.* at 13.

On December 1, 2016, Nurse Anderson saw Lockett in the HSU after being notified that he was having a SCD crisis and noted that Lockett's Lortab supply ran out and that he wanted pain medication to get through the night. Nurse Anderson contacted Dr. Manlove, the on-call doctor at the Department of Corrections (DOC), who ordered Tramadol 50 mg 1-2 tablets four times daily as needed until Lockett's Lortab supply arrives. The next day, Dr Holftizer, the DOC associate medical director, entered an order to discontinue the Tramadol and reorder Tylenol #3, prescribing one to two tablets four times daily for five days.

4

On December 4, Lockett submitted an HSR directed to the HSU Manager, Waterman, stating, "I am writing to you because I would like to speak with you. I was given hydrocodone because N/P bonson stated her self that nothing else worked for pain and she knows, but now I am on Tramadol 50(mg) 2 tab., which is not working and I have not seen anyone to examine me to determine that I should be taken off Hydrocodone. Alter I am in pain and the medication is not working (Tramadol)." *Id.* at 116. Bonson responded to the HSR the next day stating, "Your hydrocodone will be re-ordered. An on-call MD ordered the tramadol and Tylenol #3. I re-ordered it and it was filled 12-2-16. It should be coming very soon." *Id.*

Later that month, on December 14, 2016, Lockett submitted an HSR directed to Bonson stating, "I am writing to ask if you are going to refill my Hydrocodone. I am asking because I am getting low and I don't want to run out and be in pain waiting to get a refill knowing that it is going to be a holiday and everything might be bagged up." *Id.* at 115. Later that day, Bonson responded "[i]t will be done. I don't want you to run out either[,]" *id.*, and reordered the Hydrocodone. As the allegations in Lockett's complaint were about events that took place between September through December of 2016, the court will not set forth additional facts that occurred after December of 2016.

**LEGAL STANDARD**

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit

evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

### A. Lockett's Motion to Strike

As an initial matter, Lockett filed a motion to strike the supplemental declaration of Bonson (ECF No. 57) and Mollie Kugler (ECF No. 56), Bonson's attorney in this case, that were filed in support of Bonson's reply brief. Lockett claims that Bonson is attempting to raise a new issue that wasn't raised in her opening brief and trying to present new information without allowing him a chance to respond. A party moving for summary judgment, however, may file a reply to any additional facts submitted by the opposing party and any affidavits, declarations, and other materials in support. Civil L.R. 56(b)(3)(B)–(C) (E.D. Wis.). That is precisely what the supplemental declarations are. They do not present new arguments that were not raised in the initial brief, but rather provide information that elaborates on arguments initially raised or responds to arguments put forth by Lockett in opposition. Accordingly, Lockett's motion to strike will be denied.

### B. Motion for Appointment of Counsel

After briefing on the pending motions for summary judgment was complete, Lockett filed a motion for appointment of counsel. ECF No. 59. The court has no authority to appoint counsel in a

civil case. On the other hand, the court does have discretion to try to recruit counsel to assist a *pro se* litigant in bringing his case. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). In exercising that discretion, the court should first consider whether the plaintiff has made a reasonable attempt to obtain counsel on his own. If the plaintiff has made a reasonable but unsuccessful attempt to obtain counsel on his own, the court should attempt to recruit counsel for him if it finds, given the difficulty of the case, the plaintiff lacks the competence to litigate it on his own. *Id.* at 654–55. In other words, the court looks to the complexity of the case and the competence of the plaintiff to determine whether the plaintiff can coherently present it to the judge or jury by himself. *Id.*

Lockett's motion will be denied for several reasons. First, although he claims to have written three attorneys requesting assistance, he has presented no evidence of such attempts, such as copies of the letters he sent. Second, while it is true that cases involving deliberate indifference to serious medical needs can often be complex, this case is relatively straight-forward. Lockett claims that Defendants were indifferent to his pain and that their indifference took the form of failing to provide him effective pain medication. The facts relating to his claim are essentially recounted in the medical record, and judging from the parties' respective filings, there seems to be little dispute that Defendants were responsive to Lockett's complaint. While experts may dispute what the most effective and reasonable pain medication was, deliberate indifference requires more than disagreement among experts. Finally, though Lockett, like practically all inmates of our prisons, is not a lawyer, his filings exhibit a clear ability to communicate his points to the court. Defense of a motion for summary judgment requires the non-movant to present to the court evidence of a facutal dispute that is material to the outcome of the case. Since the facts of the case are well-known by Lockett, and the law governing Eighth Amendment claims based on deliberate indifference to serious medical needs is well

7

established, I am satisfied that this is not one of those cases the requires the recruitment of counsel, notwithstanding his difficulties accessing the law library. Accordingly, Lockett's motion for appointment of counsel will be denied.

## C.  Nurse Tanya Bonson

Lockett asserts that Bonson violated his Eighth Amendment rights by failing to: provide him with pain medication on particular occasions, modify his pain medication sooner, and generally provide him timely medical treatment. The Eighth Amendment protects against "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "This standard erects two high hurdles, which every inmate-plaintiff must clear. First, a plaintiff must show that [his] condition was serious, an objective standard." *Dunigan ex rel. Nyman v. Winnebago Cty.*, 165 F.3d 587, 590 (7th Cir. 1999). It is undisputed that Lockett's SCD is a serious condition. "Second, a plaintiff must show that a state official acted with the requisite culpable state of mind, deliberate indifference, a subjective standard." *Id.* at 591. "State officials are deliberately indifferent if they 'know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

A prisoner may establish deliberate indifference by demonstrating that the treatment he received was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005)). "Making that showing is not easy: 'A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances.'" *Id.* (quoting *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008) (internal quotations omitted)). "The federal courts will not interfere with a

8

doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Id.*

Although the undisputed facts establish that Lockett went without pain medication from September 26 until October 3—the date he was sent to the emergency room to treat his CSD crisis—there is no evidence that Bonson knew about his lack of medication. "Simply put, an official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Higgins v. Corr. Med. Serv. of Ill., Inc.*, 178 F.3d 508, 510 (7th Cir.1999)). Indeed, the record shows that Bonson had renewed Lockett's Tylenol #3 a few days earlier, and that prior to October 3, Lockett had not filed any HSRs alerting Bonson that he was not receiving the medication that she prescribed after September 26. Rather, the only HSR that Lockett filed inquired about whether he would be seeing a specialist regarding his SCD to which Bonson promptly responded; it made no mention of the fact that he was not receiving his prescribed Tylenol #3. Additionally, when Lockett alerted Bonson in December that he was receiving Tylenol #3 instead of the Hydrocodone Bonson prescribed, Bonson addressed the issue immediately and the record does not show that Lockett did not receive the Hydrocodone after that point.

Regarding Bonson's decision not to change Lockett's pain medication after he was sent to the emergency room in early October from Tylenol #3 to Oxyocodone as recommended by the treating physician there, "[a] medical professional's treatment decisions will be accorded deference 'unless no minimally competent professional would have so responded under those circumstances.'" *Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008) (quoting *Sain*, 512 F.3d at 895 (internal citations and

9

quotations omitted)). Bonson's decision to continue Lockett's Tylenol #3, while not necessarily the same decision that every medical professional may have made, was a justified exercise of professional judgment given the information before her. Bonson based her decision on Lockett's medical record and history, her concern regarding opioid use and substance abuse in prison, the high amount of Oxycodone prescribed, and the fact that prior to the October incident, Lockett's long-term pain appeared to have been successfully managed by the Tylenol #3 since changing over to that medication on September 2, 2016. Lockett's claim that he notified Bonson on September 7, 2016, that the Tylenol #3 did nothing for the pain is not supported by the record. The notes in the medical logs state "[p]atient seen in HSU on unit for lab draw. [Patient] was explained risk and benefit of lab draw." ECF 57-1 at 3. There is nothing in the log regarding Lockett reporting the ineffectiveness of Tylenol #3 or stating that Bonson was present at the appointment. Even assuming that Lockett's claim is true, Bonson's decision does not constitute deliberate indifference given the fact that this would be the only complaint submitted by Lockett for a month-long period, indicating that the Tylenol #3 was sufficient to treat his long-term pain. "'What we have here is not deliberate indifference to a serious medical need, but a deliberate decision by a doctor to treat a medical need in a particular manner.'" *Jackson*, 541 F.3d at 698 (quoting *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)).

Lockett's reliance on *Walker v. Bonson*, No. 17-CV-234-BBC, 2018 WL 2452774 (W.D. Wis. May 31, 2018) is misplaced. While in *Walker* the prisoner plaintiff submitted multiple HSRs stating that he was in pain and that the treatment options available to him were not effective, here, Lockett did not submit any HSRs that would have alerted Bonson that the Tyelnol #3 was not sufficient to treat Lockett's long-term pain. Although Bonson did not examine Lockett prior to making her decision, as was the case in *Walker*, that fact alone was not why the court denied summary

judgment. Rather, summary judgment was denied because a reasonable jury could "conclude that Bonson cancelled the TENS unit when asked to do so by security instead of making an independent medical judgment about plaintiff's need for the device." *Id.* at *6. *Walker* is distinguishable from this case based on the multiple HSRs and the fact that Bonson cancelled the TENS unit prescription in response to a security request that arose from concerns the plaintiff was tampering with the device. Unlike *Walker*, the evidence here supports the conclusion that Bonson's decision was the result of her independent medical judgment despite the fact that she did not examine Lockett in person: her decision was not prompted by a request from security but rather Lockett's medical condition, and she reviewed Lockett's medical record and history and determined that continuing Tylenol #3 would be the best course of action. The fact that Bonson later prescribed hydrocodone does not render her October decision incorrect. Because "disagreement with medical professionals about treatment needs cannot sustain an Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976)," *Washington v. Heidorn*, No. 10-C-0032, 2011 WL 2600668, at *5 (E.D. Wis. June 29, 2011) (citing *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003)), the court is convinced that Bonson is entitled to summary judgment, and the claims against her will be dismissed.

### D.     Nurse Beth Edge

Edge asserts that the claims against her should be dismissed because Lockett failed to exhaust his administrative remedies. Lockett claims that his failure to exhaust administrative remedies was due to no fault of his own.

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.] section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §

11

1997e(a). Prison conditions includes "conditions of confinement or the effects of actions by government officials on the lives of persons confined in prisons." 18 U.S.C. § 3626(g)(2). The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Seventh Circuit takes a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opporunity to consider the grievance." *Pavey v. Conley*, 663 F.3d 899, 905–06 (7th Cir. 2011). "Such an opportunity exists only if 'the grievant complies with the system's critical procedural rules.'" *Stallings v. Cook Cty.*, No. 11 C 7349, 2013 WL 3669623, at *5 (N.D. Ill. July 12, 2013) (quoting *Pavey*, 663 F.3d at 905–06). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits." *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).

Wisconsin has established the Inmate Complaint Review System (ICRS) as the principal administrative remedy for inmates. The ICRS has "the purpose of affording inmates a procedure by which grievances may be expeditiously raised, investigated and decided." *Staples v. Young*, 149 Wis. 2d 80, 85, 438 N.W.2d 567 (1989). Under the ICRS, an inmate must file a complaint with the Inmate Complaint Examiner (ICE) within 14 days after the occurrence giving rise to the complaint. *See* Wis.

Admin. Code § DOC 310.09 (2016).[1]  An inmate may appeal the reviewing authority decision to the CCE within 10 days after the date of the decision.  § DOC 310.13(1) (2016).  The Office of the Secretary "shall make a decision within 10 working days following the receipt of the CCE's recommendation." § DOC 310.14(1) (2016).  "Before an inmate may commence a civil action or special proceedings, the inmate shall exhaust all administrative remedies the department has promulgated by rule." § DOC 310.05 (2016).

With regards to Lockett's complaint against Edge, WSP-2016-25074, ICE investigated the complaint and recommended it be dismissed, which it later was.  Although Lockett did not file a Proposed Finding of Fact regarding this issue, Lockett asserts in his response brief that his failure to exhaust remedies is due to no fault of his own because he "placed his appeal in the box to madison yet he never received a response in the matter at hand." Pl.'s Resp., ECF No. 36 at 2.  Lockett, relying on *Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006), argues that when a prisoner "properly follow[s] procedure and prison officials [are] responsible for the mishandling of his grievance, it cannot be said that [he] failed to exhaust his remedies." 438 F.3d at 811.

In *Dole,* the plaintiff placed his complaint "in the 'chuckhole' of his cell for the guard to pick up and mail." *Id*. at 807.  When the plaintiff received decisions from the review board on two previously submitted complaints, he wrote to the review board to inquire about the status of the grievance at issue.  *Id*.  The review board stated it had no record of the grievance, and did not provide the plaintiff any instructions on how to proceed given the fact that the time-period for filing a timely

---

[1] On April 1, 2018, the Department of Corrections promulgated a new rule replacing Wis. Admin. Code § DOC ch. 310. All citations are to the version that was in effect at all times material to Lockett's claim.

13

grievance had passed. *Id*. at 807–08. The *Dole* Court reversed the dismissal of the plaintiff's claims for failure to sufficiently exhaust administrative remedies "[b]ecause [the plaintiff] took all steps necessary to exhaust one line of administrative review, and did not receive instructions on how to proceed once his attempts at review were foiled . . . ." *Id*. at 813. In particular, the Court noted that "[t]he regulations were not clear about how to proceed once a timely grievance was lost." *Id*. at 811. The Court also stated, however, that "it is possible that our holding would be different if the [review board] had given [the plaintiff] instructions on how to proceed and [the plaintiff] had ignored or improperly followed those instructions" and suggested that "future false claims can be minimized by setting up a receipt system for prison mail." *Id*. at 811–12.

Unlike the review board in *Dole*, the Wisconsin ICRS has such a receipt system: "[t]he CCE shall, within 5 working days after receiving an appeal, issue a written receipt of the appeal to the inmate." Wis. Adm. Code § DOC 310.13(4) (2016). Here, Lockett has provided no evidence that he followed-up when he did not receive a receipt, unlike the plaintiff in *Dole*. Given Lockett's familiarity with the grievance system, having previously filed 21 complaints, *see* ECF No. 35-1, he should have known that his grievance had not been received or reviewed.

Lockett argues that the "inmate complaint system of Wisconsin prison system states if you don't hear anything consider it dismissed." Lockett Aff., ECF 37 at ¶ 4. The relevant rule, however, states "[i]f the inmate does not receive the secretary's written decision within 45 working days *of the CCE's acknowledgment of receipt of the appeal,* the inmate shall consider the administrative remedies to be exhausted . . . ." Wis. Adm. Code § DOC 310.14(3) (2016) (emphasis added). Exhaustion by this manner is conditioned on receiving an acknowledgment of receipt of the appeal. Absent a receipt, as is the case here, an inmate's administrative remedies are not considered

14

exhausted. As a result, given the Seventh Circuit's strict compliance requirement, the court finds that Edge is also entitled to summary judgment.

**E.      Jane Doe**

Regarding Lockett's allegations against Jane Doe, he has not identified her nor appeared to have pursued discovery to identify her, and he has not suggested that he had difficulty attempting to identify her. As a result, the court concludes that Lockett has abandoned his claims against Jane Doe and his claims against her will be dismissed.

## CONCLUSION

For the foregoing reasons, Lockett's motion to strike (ECF No. 61) is **DENIED**, as is his motion for appointment of counsel. (ECF No. 59) Bonson's motion for summary judgment (ECF No. 38) and Edge's motion for summary judgment (ECF No. 32) are both **GRANTED.** The Clerk is directed to enter judgment dismissing the case with prejudice.

**SO ORDERED** this  6th  day of December, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
